IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

IN RE:                              )
                                    )      CHAPTER 11
RRG, INC.                           )      CASE NO. 24-10075-SDB
                                    )
        DEBTOR.                     )

## MOTION TO AUTHORIZE PAYMENT TO CRITICAL VENDORS

COMES NOW, RRG, INC., the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case (the "Debtor"), and moves the Court to authorize critical vendor payment on prepetition debt (the "Motion") and states as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion under 128 U.S.C. §§157 and 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §157(b).

### Background

2. On January 31, 2024 ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1101, 1107, 1108 & 1182 of the Bankruptcy Code.

3. The Debtor is a Popeye's franchisee and operates eighteen (18) locations.

### Relief Requested

4. The Debtor is a fast food franchisee.

5. The Debtor believes that goods and services supplied by certain vendors are critical to the operation in that its business could not continue to operate and provide a feasible plan without access to such goods and services.  As of the Petition Date, many of the vendors

deemed critical by the Debtor have outstanding claims against the Debtor arising from prepetition deliveries of goods and prepetition performance of services. The debtor anticipates it will be able to continue to transact with a majority of the vendors on which its day-to-day business operations depend despite nonpayment by the Debtor of such vendors' prepetition claims. Nonpayment of the prepetition claims of certain vendors, specifically The Merchants Company, LLC ("Merchants"), however, will create a significant disruption to the Debtor's operations. Thus, the Debtor anticipates that the payment of the prepetition claim of Merchants will benefit all creditors because such payment will allow the Debtor's business to avoid a likely loss, or gain a likely economic advantage, disproportionate to the amount of such Merchants' prepetition claims, including but not limited to continued delivery of stored goods.

6. Accordingly, the Debtor requests that the Court authorize the Debtor to pay Merchants on prepetition debt and to incur debt with Merchants, as follows: (1) the Debtor will pay Merchants its claim under the provisions of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §499a *et seq.* ("PACA"), in the amount of $88,001.49; (2) the Debtor agrees to recharacterize Merchants' general unsecured claim to a secured claim in lieu of immediate payment; and (3) the Debtor will make payments to Merchants in the amount of $15,000.00 per week toward the outstanding prepetition balance of Merchants' claim.

**Terms of Payment of Pre-Petition Debt to Merchants and incurring of Debt to Merchants**

7. In preparation for filing its Chapter 11 case, the Debtor evaluated the goods and services vendors likely to have outstanding claims against the Debtor as of the Petition Date. The Debtor analyzed whether there were any providers of goods and services that are critical

to its ability to operate its business and generate a feasible plan.  The Debtor distinguished certain of its vendors as "Critical Vendors" according to the following criteria:

    a.   Whether (i) the goods and services supplied by a particular vendor are essential to the continued operation of the Debtor's business and cannot be obtained from any other vendor, or could be obtained from another vendor only at such extra cost or at such delay as to outweigh the cost of paying the prepetition claim, or (ii) whether the vendor was in possession of valuable property of the Debtor that is necessary to the Debtor's ability to generate revenue;

    b.   Whether the cost of paying the prepetition claim of such vendor, to the extent that such claim is fixed, noncontingent, liquidated, and undisputed, is outweighed by the benefit such payment is likely to secure on behalf of the Debtor's estate and other creditors; and

    c.   Whether such vendor would likely continue doing business with the Debtor notwithstanding nonpayment of prepetition claims, such as those vendors subject to long-term, non-terminable contractual commitments.

8.   According to the above criteria, the Debtor was able to distinguish, from the many vendors with whom the Debtor deals, one vendor that the Debtor deems to be a Critical Vendor, is Merchants.  Merchants provides the food inventory to the Debtor which is necessary to operate the Debtor's business, specifically selling fast food.  Merchants is the only vendor able to meet the Debtor's requirements such that it would take substantial time for the Debtor to find alternate suppliers that are approved by the Debtor's Franchisor.

9.   The Debtor perceives a risk that, for Merchants, a default by the Debtor would extinguish the Debtor's access to food because (i) Merchants will refuse to continue doing business

with the Debtor it its prepetition claim remains unpaid, and (ii) Merchants may choose to continue doing business with the Debtor only upon the condition of prepayment of the prepetition debt due.

10. Additionally, Merchants arguably holds a lien on the perishable assets of the Debtor, if the Debtor fails to pay.

11. Accordingly, the Debtor proposes the establishment of the following procedures for payment of the prepetition claim of Merchants:

   a. Merchants shall continue to supply to the Debtor the food necessary to run its business and will provide 14-day terms;

   b. the Debtor shall pay for the postpetition services in the ordinary course of business;

   c. the Debtor shall pay in full Merchants' PACA claim in the amount of $88,001.49;

   d. the Debtor agrees to recharacterize the general unsecured claim of Merchants to a secured claim in lieu of immediate payment; and

   e. the Debtor shall make payments to Merchants in the amount of $15,000.00 per week toward the outstanding prepetition balance of Merchants' claim.

## Ample Support Exists to Warrant Establishment of the Critical Vendor Payment Procedures

12. Sections 1101, 1107, 1108, and 1182 of the Bankruptcy Code, which provide that a debtor-in-possession shall perform all the functions and duties of a trustee, contain an implied duty that a debtor-in-possession act as a fiduciary "to protect and preserve the estate, including an operating business's going-concern value," on behalf of the Debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (N.D. Tex. 2002)).

13. Pursuant to section 105(a) of the Bankruptcy Code, "[t]he [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code thus empowers the Court to issue any order "necessary or appropriate" to allow a debtor-in-possession to fulfill its duty to preserve the going-concern value of the business, including an order authorizing payment in full or in part of certain prepetition claims of unsecured creditors prior to confirmation of a plan.

14. Courts have long recognized that payment of some categories of prepetition obligations outside the plan of reorganization is often necessary to realize the paramount goal of rehabilitation of a debtor. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175, 177 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." (citation omitted)).

15. Courts have authorized debtors to make payment in full or in part of the prepetition claims of nonpriority general unsecured creditors where necessary to preserve or enhance the value of the Debtor's estate to the benefit of all creditors. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (authorizing payment of certain critical trade vendors).

16. The court in *CoServ* noted that there are occasions when a debtor-in-possession's duty to preserve the business "can only be fulfilled by the pre-plan satisfaction of a prepetition claim." 273 B.R. at 497. Rather, payment of prepetition claims is necessary, and may be authorized, whenever it is established that (1) it is critical the debtor deal with the claimant, (2) a failure to deal with the claimant risks probable harm or eliminates an economic advantage disproportionate to the amount of the claim, and (3) there is no practical or legal

alternative to payment of the claim (the "*CoServ* Test"). *Id.* at 498. The *CoServ* court provided an illustrative list of situations where payment of prepetition obligations by a debtor-in-possession may be a necessary predicate to preservation of the business. For example, the court noted that "[c]laims may require payment to avoid loss of a license through the exercise of a jurisdiction's police power." *Id.* at 497. In addition, prepetition warranty or refund claims of consumer customers fell into this category because, if not honored, it "could so harm the Debtor's good will as to destroy its going concern value." *Id.* The Court stated that, "like employees, the bankruptcy court cannot force consumers to deal with the debtor, nor is there any practical alternative to satisfying warranty or refund claims." *Id.* The court also noted that where "payment of a prepetition unsecured claim is the only means to effect of a substantial enhancement of the estate . . . payment would be justified." *Id.*

17. Advance proof of necessity of payment, however, is not required in every instance. *See In re Mirant Corp.*, 296 B.R. 427, 429 (N.D. Tex. 2003). The *Mirant* court recognized that a company operating in Chapter 11, especially early in the case, is in a "precarious position," and that serious damage could occur to a debtor's business were a court to require advance proof that each payment of a prepetition claim outside a confirmed plan of reorganization was necessary within the meaning of the *CoServ* Test. 296 B.R. at 429. Thus, because it "[did] not wish [the] [d]ebtors' business seriously damaged by the delay required to satisfy the court that a particular creditor should be paid," the court granted the debtor general authority to pay the prepetition claims of critical vendors as necessary. *Id.* at 429–30; *cf. In re Kmart Co.*, 359 F.3d 866 (7th Cir. 2004).

18. Authorization of the payment of the pre-petition claim of Merchants and the incurring of debt is warranted.  The payment of Merchants' pre-petition debt will allow the Debtor to protect the interests of the Debtor's estate.

19. Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted.

### Waiver of Bankruptcy Rule 6004(a) and (h)

20. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay on an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

21. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party in interest's right to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.  Finally, the relief requested herein shall not oblige the Debtor to accept any services, to accept the shipment of goods, or prevent the Debtor from returning or rejecting goods.

**WHEREFORE** the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

This 6th day of February, 2024.

/s/ Bowen A. Klosinski
Bowen A. Klosinski

Attorney for Debtor
Georgia Bar No. 842225

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia 30909
706-863-2255

CERTIFICATE OF SERVICE

I, Bowen A. Klosinski, of Klosinski Overstreet, LLP, do hereby certify that I have served a copy

of the within and foregoing **MOTION TO AUTHORIZE CRITICAL VENDOR PAYMENT**

**ON PREPETITION DEBT** upon:

Matthew E. Mills, Esq.
Office of the U.S. Trustee
33 Bull Street, Suite 400
Savannah, Georgia 31401

Tiffany E. Caron
Subchapter V Trustee
Post Office Box 711
West Palm Beach, FL 33402

Bradford J. Sandler
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
Wilmington, Delaware 19801

By e-mail and/or mailing a copy through the United States mail with sufficient postage attached
thereto to assure delivery.

THIS 6th day of February 2024.

/s/ Bowen A. Klosinski
Bowen A. Klosinski
Attorney for Debtor
Georgia Bar No.: 842225

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia 30909
706-863-2255
bak@klosinski.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

IN RE:                                        )
                                              )    CHAPTER 11
RRG, INC.                                     )    CASE NO. 24-10075-SDB
                                              )
        DEBTOR.                               )

## ORDER ON MOTION TO AUTHORIZE CRITICAL VENDOR PAYMENT ON PREPETITION DEBT

Upon the Motion of RRG, Inc., the Debtor and Debtor-In-Possession in the above-captioned Chapter 11 case (the "Debtor"), to Authorize Critical Vendor Payment on Prepetition Debt (the "Motion"), the Court finds as follows:

### Jurisdiction

1. This Court has jurisdiction over this Motion under 128 U.S.C. §§157 and 1334, Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §157(b).

## **Background**

2. On January 31, 2024 ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1101, 1107, 1108 & 1182 of the Bankruptcy Code.

3. The Debtor is a Popeye's franchisee and operates eighteen (18) locations.

4. The Debtor believe that the goods and services supplied by certain of its vendors are critical to its operation in that its business could not continue to operate and provide a feasible plan without access to such goods and services.

IT IS THEREFORE, ADJUDGED ORDERED AND DECREED THAT:

a. Merchants shall continue to supply to the Debtor the food necessary to run its business and will provide 14-day terms;

b. the Debtor shall pay for the postpetition services in the ordinary course of business;

c. the Debtor shall pay in full Merchants' PACA claim in the amount of $88,001.49;

d. the Debtor agrees to recharacterize the general unsecured claim of Merchants to a secured claim in lieu of immediate payment; and

e. the Debtor shall make payments to Merchants in the amount of $15,000.00 per week toward the outstanding prepetition balance of Merchants' claim.

f. The notice provisions of Bankruptcy Rule 6004(a) and (h) are hereby waived.

[END OF DOCUMENT]

PREPARED BY:

/s/ Bowen A. Klosinski
Bowen A. Klosinski
Attorney for Debtor
Georgia Bar No. 842225

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia 30909
706-863-2255
bak@klosinski.com