IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| RRG, INC., ) | CASE NO. 24-10075-SDB |
| DEBTOR. ) | |
| ) | |

## FOURTH AMENDED AND RECAST OF CHAPTER 11 PLAN OF LIQUIDATION OF RRG, INC. BY BOWEN A. KLOSINSKI, DEBTOR'S COUNSEL

COMES NOW, RRG, Inc. ("Debtor") in the above matter, and files this Fourth Amended Plan of liquidation (the "Plan") pursuant to 11 U.S.C. §§1123, 1189, and 1190 and Bankruptcy Rule 3016. Debtor filed is original Chapter 11 Subchapter V Plan on April 30, 2024 [Dkt.#261], a First Amended Chapter 11 Subchapter V Plan on May 7, 2024 [Dkt.#272], a Second Amended Chapter 11 Subchapter V Plan on August 29, 2024 [Dkt. #471], and a Third Amended Chapter 11 Subchapter V Plan on September 19, 2024 [Dkt. #505].

### PREAMBLE

NO REPRESENTATIONS CONCERNING THE DEBTOR, OTHER THAN SET FORTH IN THIS PLAN, ARE AUTHORIZED BY THE DEBTOR. ALL PARTIES ARE DEIRECTED TO EXAMINE THE PLAN FOR A DETERMINATION OF VALUES AND TREATMENT OF CLAIMS. ANY REPRESENTATIONS OR INDUCEMENTS MADE OTHER THAN AS CONTAINED IN THIS PLAN OR AS AUTHORIZED BY THE COURT SHOULD NOT BE RELIED UPON BY YOU, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

THE INFORMATION CONTAINED IN THIS PLAN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT; THEREFORE, DEBTOR IS UNABLE TO WARRANT THE ACCURACY OF FINANCIAL INFORMATION CONTAINED IN THIS PLAN. NOTWITHSTANDING, EVERY REASONABLE EFFORT HAS BEEN MADE BY THE DEBTOR TO BE ACCURATE IN ITS ACCOUNTING PROCEDURES AND ALL REPRESENTATIONS SET FORTH HEREIN. AS SUCH, IN ACCORDANCE WITH 11 US.SC. §§ 1189 AND 1190, DEBTOR HEREBY SHOWS THIS COURT, ALL OF ITS KNOWN CREDITORS, AND INTERESTED PARTIES THE FOLLOWING:

### ARTICLE I

### SUMMARY AND INTRODUCTION

This Plan of Liquidation ("Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor from proceeds of an authorized sale of Debtor's assets, from funds remaining from the operation of Debtor's business and any funds received as a result of

Debtor's Employee Retention Credit ("ERC") claim.  Alternatively, if ERC claim is ineffective or inefficient, Debtor may pursue Avoidance Actions as further outlined and set forth in this Plan.

This Plan provides for one (1) class of secured claims, one (1) class of administrative claims, one (1) class of priority claims, one (1) class of unsecured claims, and one (1) class of insider claims.  Creditors will be paid pursuant to the terms of this Plan as provided for herein.

All creditors and holders of claims against the Debtor should refer to Articles 2 through 15 of the Plan for information regarding the precise treatment of their claim.  Counsel for Debtor's landlord's of assumed leases are specifically referred to Article 5.3.3.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one).**

## ARLTICLE II

## Contents of the Plan; Required Disclosures

### 1.1     *Small Business Debtor and Plan Proponent.*

The Debtor has filed bankruptcy as a "small business debtor" as defined by 11 U.S.C. §§101(51D) and 1182 (1)(A).  The Debtor is qualified as a debtor under Subchapter V of the Chapter 11 of the Bankruptcy Code.  In accordance with 11 U.S.C. §1191 the Debtor is the proponent of the Plan and the Plan is filed timely.

### 1.2     *History of the Debtor's Business Operations.*

The Debtor is a Georgia Corporation formed on or around March 13, 2000.  The Debtor was a Franchisee of Popeyes Louisiana Kitchen, Inc. and owned and operated multiple Popeyes fast food restaurants ("Restaurants").  Prior to the Petition Date, Debtor operated seventeen (17) Restaurants located in Georgia and South Carolina. All Restaurants were operated on real property the Debtor that Debtor leased from several landlords.  After the Petition Date, Debtor rejected three (3) leases and has since shuttered the Restaurants which were operated on those leased premises.  Pursuant to an Order Approving Sale entered by this Court, the Debtor sold the remaining fourteen (14) Restaurants and is no longer operating.  As of July 22, 2024, Debtor no longer operates any Restaurants.

The three (3) leased properties Debtor has rejected are hereinafter referred to as "Rejected Properties."

The Debtor is owned by Mark Rinna and Jane Rinna (collectively the "Rinnas"), and each own fifty percent (50%) of the shares in the Debtor.  Prior to the filing, the Rinnas' two (2) children each owned five percent (5%) interests in the Debtor; however, the Rinnas' children surrendered their interests in the Debtor pre-petition for no consideration.

The reason for the filing of Bankruptcy was that the Debtor was experiencing significant operating losses for the Restaurants located on the Rejected Properties. The Debtor, like most restaurants across the nation faced significant financial distress as a result of governmental responses to the Covid-19 pandemic, which imposed various restrictions leading to decreased

revenue and, ultimately, insolvency for many establishments.  The Debtor battled back but the continued losses experienced by Debtor from continuing to operate on the Rejected Properties caused Debtor to fall behind on its expenses and lease payments for every Restaurant.  Debtor's Landlords were threatening termination of their respective leases; therefore, Debtor found it necessary to file for bankruptcy protection to avoid the loss of the profitable Restaurants.

An order on Debtor's Motion to Sell free and clear of liens under 11 U.S.C. Section 363(f) [Dkt. No.: 255] ("Sale Motion") was entered on June 4, 2024 [Dkt. No.:315] ("Sale Order").  The Sale Order authorized Debtor to sell its assets of Debtor to SBH FOODS PLK, LLC ("Buyer") for a purchase price of $7,150,000.00 pursuant an asset purchase agreement attached to Sale Motion. The Sale Order required Debtor to file this Amended Plan within thirty (30) days of the closing of the sale.  The U.S. Trustee and Subchapter V trustee agreed to an extension to file this Plan to August 29, 2024.  At a status conference hearing held in this matter on September 5, 2024, this Court directed Debtor's counsel to file its Third Amended Plan by September 19, 2024. At a status conference hearing held in this matter on October 4, 2024, this Court directed Debtor's counsel to file this Fourth Amended Plan by October 25, 2024 [Dkt.#531].

Buyer closed on the sale of Debtor's assets on July 22, 2024.  Debtor filed a Report of Sale on July 24, 2024 [Dkt. No.: 386] amended thereafter on August 28, 2024 [Dkt. #468] showing that the net proceeds of the sale in the amount of $2,110,719.29 ("Sale Proceeds").  Pursuant to the Sale Order, Sale Proceeds remain in the trust account of Debtor's Counsel until disbursement of same is authorized under the terms of this Plan.

Additional funds remained in trust with Debtor Counsel which include a retainer to Debtor's counsel in the amount of $11,738.00, $2,500.00 received from Debtor on April 8, 2024 as the only Subchapter V Trustee payment made pursuant to interim orders to use cash collateral [Dkt. No.: 73].

As of the date of this Plan, funds held in trust with Debtor's Counsel have been reduced by $97,510.53, pursuant this Court's order at Docket Numbers: 403 and 427, which paid attorney's fees and costs to Debtor's Counsel for fees and costs through May 31, 2024.  As of today, the total amount held in trust by Debtor's Counsel is $2,027,446.76.  Debtor will file additional operating reports for as long as Debtor maintains a debtor in possession bank account, which will disclose any amounts paid out of Debtor's bank account.

### 1.3    Current Management and Employees.

#### 1.3.1   Directors, Insiders, and Officers of Debtor.

Mark Rinna shall remain President, CEO, and a fifty percent (50%) owner of Debtor.  Jane Rinna shall remain Vice President and a fifty (50%) owner of the Debtor.  Mark and Jane Rinna ("Executives") are insiders of the Debtor, are the only remaining employees of Debtor, and they will remain employed by Debtor assist with the liquidation under this Plan and wind down the business.  During the operation of Debtor's business, Mark Rinna received an annual salary of $100,000.00 and Jane Rinna received an annual salary of $20,000.00.  Debtor has not paid Executives a salary after closing of the sale.

*1.4*     *Liquidation Analysis.*

The remaining secured claims of Debtor are estimated to be approximately $610,007.61, which includes the estimated claim of Pacific Premier Bank's attorney's fees. Debtor's Counsel estimates approximately $625,931.11 in post-petition admin claims (Class 3 Creditors including Landlord Attorney fees claims). The Subchapter V Trustee estimates Trustee fees of approximately $65,000.00. Debtor's counsel estimates additional fees of approximately $150,000.00 (June 1, 2024 through report of case). Debtor's Accountant has an approved post-petition fees claims for $18,069.00 for work through June 25, 2024. Additionally, Debtor needs to reserve an additional $15,000.00 for closing out tax services of Accountant and an additional $5,000.00 to pay Debtor's payroll company, Paychex, to issue W-2s and 1099 to over 500 employees in January 2025. Debtor's counsel estimates additional priority claims to Class 2 Creditors to be approximately $384,465.97.

Debtor's schedule of assets lists as money owed to Debtor a claim for ERC funds in the net amount of $1,412,335.16. ERC is a refundable employment tax credit that incentivized businesses to retain and continue paying employees during the COVID pandemic when businesses were shutting down due to government order or experiencing significant decline in business revenue. Employers who satisfy the eligibility requirements complete an amended quarterly payroll tax return to calculate and apply the tax credit, or offset, against the employer's share of certain payroll taxes. If the tax credit exceeds the amount of the employer's share of the payroll taxes owed for a given quarter, the excess (overpayment) is refunded, or paid, to the employer. As of the date of this Plan, the likelihood of Debtor's receipt of ERC funds is unknown and reliant on the Internal Revenue Service. News releases regarding ERC payouts can be found at www.irs.gov.

Debtor's ERC claim was applied for within the applicable time period by a company that specializes in ERC applications, Empower Solutions, LLC ("Empower Solutions"). Debtor could not afford to pay Empower Solutions an up front fee for submitting its ERC application, therefore, Debtor and Empower Solutions entered into a contract providing that Empower Solutions is to receive a 25% fee of the ERC claim. Debtor's full ERC claim is $1,883,113.55, Empower Solutions is to receive a 25% fee on the claim equaling $470,778.39. The remaining balance of the ERC claim, $1,412,335.16. Debtor understands that the ERC claim could potentially be funded in two installments over two quarters, when and if it is paid.

In Debtor's Third Amended Plan filed on September 19, 2024 [Dkt. 505] ("Third Plan") Debtor reported an amount of approximately $234,424.00 that was held in Debtor's Bank Account as shown on Debtor's July operating report [Dkt. 435]. In a telephonic hearing on this matter held on October 4, 2024, Debtor's representatives testified that the aforementioned bank account balance was inaccurate because a significant portion of the money in Debtor's account was property of the Buyer. The reason a significant portion of money was in Debtor's bank account was because a prior account receivable of Debtor, Door Dash (a food delivery service), continued to deposit money that was owed to Buyer after the closing date, July 22, 2024. Debtor, Door Dash, and Buyer were proactively trying to resolve the matter, however, payments intended for Buyer kept being deposited with Debtor. Debtor no longer receives payments that are intended to be paid to the Buyer.

In addition to the conduit payments the reported amount in Debtor's Bank account was inaccurate as of the date of the Third Plan, because Debtor continued to make post-petition payments owed to creditors owed for post-petition  The post-petition payments made to vendors are accounted for on Debtor's August reconciliation filed on October 4, 2024 [Dkt. #528], and Debtor's September Operating report filed on October 21, 2024 [Dkt. #540].

As of the date of the filing of this Fourth Amended Plan (the "Plan"), the balance of Debtor's account is $43,874.41.  Pursuant to an order entered by this Court [Dkt.#531], Debtor was allowed to make certain expenditures prior to the filing of the Plan.  The increase in the balance of Debtor's account comes from insurance refunds, payroll refunds for overpayments on payroll taxes, and a large deposit of approximately $26,000.00 from a rebate with a Popeye's system purchasing cooperative from materials purchased in 2023. Debtor will forward $35,000.00 to Debtor's Counsel to hold in trust and be apart of the initial distribution to Creditors described herein and leave the remaining balance in Debtor's bank account.  It is important that Debtor's bank account stays active so that ERC claim can be funded without further delay.  Closing the bank account and changing funding instruction with the Internal Revenue Service could potentially cause delay with ERC funding.

Debtor intends to fund the Plan with sale proceeds held in Debtor's Counsel's trust account, remaining funds held in Debtor's bank account, and ERC funds if they are paid. Additionally, Debtor's assets lists a vehicle with an approximate value of $25,000.00.  If ERC funds have not been paid within six (6) months of the Effective Date of the Plan then Executives will purchase said vehicle from the Estate in the amount of $10,000.00.  At that same time, the remaining balance of the Debtor's bank account will be liquidated and the funds from said vehicle sale and remaining balance in the bank account will be distributed pro-rata to remaining unsecured creditors.

After payment of Class 3 Creditors, Administrative costs of the Estate, Secured Creditors, and Class 2 Priority Claims, Debtor estimates approximately $198,973.07 available for an initial distribution to unsecured creditors.  A hypothetical liquidation of Debtor's assets, excluding ERC funds, would result in an estimated dividend of approximately 17% to be distributed pro rata to general unsecured creditors after payment of higher in priority claims under the Bankruptcy Code and payment of fees pursuant to 11 U.S.C. §326(a) or 11 U.S.C. §330.  The latter dividend is based on general unsecured claims being estimated at $1,174,974.00.  Attached hereto as Exhibit "A" is the estimated liquidation analysis ("Liquidation Analysis").  Please note that Liquidation Analysis is not a final determination of the dividend stated herein because certain administrative claims, attorney's fee claims, and other priority claims are not yet determined, however, those claims have been estimated and taken into account to arrive at the dividend.  In the event that ERC funds are funded at $1,412,335.16, Debtor expects a 100% distribution to general unsecured creditors.

Debtor believes that the Estate holds claims for Avoidance Actions.  Debtors original Schedule E/F [Dkt.#59] lists unsecured creditors that were owed prepetition debts at Filing Date. If compared to Debtor's list of unsecured creditors as set forth in Exhibit C of this Plan, the Unsecured Creditors that potentially received post-petition payments on pre-petition debts can be identified. This Plan specifically reserves the right to pursue said Avoidance Actions, however, it

is important to note that the funding of ERC claim will make pursuing Avoidance Actions unnecessary.

Debtor has knowledge of a stay violation claim against JAC Services, Inc. who made an unauthorized debit on Creditor's bank account sometime around September 26, 2024 in the amount of $9,715.08. This claim is specifically reserved herein.

*1.5      Alternate Confirmation Standards Under Section 1191 (a) and (b).*

The Debtor seeks to confirm this Plan by obtaining the consent of all impaired classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting.  If Debtor succeeds in obtaining the consent of impaired Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply.  If Debtor in unable to obtain the consent of all Classes, Debtor hereby requests the Court to confirm the Plan under 1191(b) of the Bankruptcy Code.  In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

*1.6      Property and Claims.*

This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

## Article 2

### Definitions and General Provisions

For purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of Plan.  Any term that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

*2.1      Definitions.* The following terms, when used in this Plan, shall have the following meaning:

2.1.1 "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2 "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

2.1.3 "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4 "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5 *"Assets"* means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date of the Plan or thereafter.

2.1.6 "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to section 502, 501, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date of the Plan.

2.1.7 "*Ballot*" means each of the ballot forms distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and that are entitled to Vote.

2.1.8 "*Bankruptcy Case*" means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.1.9 "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10 "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Georgia, Augusta Division.

2.1.11. "*Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12. "Business Day" means any day on which the commercial banks are required to be open for business in Augusta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.14 "*Causes of Action*" means any and all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, counterclaims, setoffs, defenses affirmative or otherwise, against other persons or entities, whether known or unknown, disclosed or undisclosed, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.16 "*Claim*" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "*Class*" means a category of Claims described in this Plan.

2.1.18 "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "*Confirmation Order*" means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.21 "*Debtor*" shall mean **RRG, Inc.**, the debtor in this Bankruptcy Case.

2.1.22 *Reserved.*

2.1.23 "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bare date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24 "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "*Distribution*" means any distribution by Debtor to a Holder of an Allowed Claim.

2.1.26 "*District Court*" means the United States District Court for the Southern District of Georgia, Augusta Division.

2.1.27 "*Effective Date of the Plan*" means the date that is thirty (30) days after the date the Confirmation Order becomes final and non-appealable.

2.1.28 "*Estate*" means with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of Debtor and any and all of Debtor's interests in property, whether real, personal, or mixed, rights, causes of actions, avoidance powers or extensions of time that such debtor or such Estate shall have has as of the commencement of the Bankruptcy Code, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549, or 550 of the

Bankruptcy Code, or otherwise. In the event this Plan, is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code that he Debtor had acquired after the petition date but before the case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurred first, and (2) any earnings from services performed by the Debtor, that Debtor acquires after commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurred first.

2.1.29 "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.30 "*Filing Date*" means the date of filing the petition, to wit: **January 31, 2024.**

2.1.31 "*Final Distribution*" means the Distribution by Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.32 "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.33 "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.34 "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.35 "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.36 "*Initial Distribution Date*" means the Effective Date of the Plan.

2.1.37 "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.38 "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other legal entity.

2.1.39 "*Plan*" means this plan of liquidation as same may hereafter be corrected, amended, stipulated, supplemented, restated, or modified.

2.1.40 "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.41 "*Priority Tax Claim*" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.42 "*Professional Compensation*" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor or Subchapter V trustee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.43 "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims or Interests entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.44 "*Record Holder*" means the Holder of a Claim or Interests as of the Record Date.

2.1.45 "*Released Parties*" means Debtor.

2.1.46 "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date of the Plan, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.47 "*Schedules*" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.48 "*Secured Claim*" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.49 "*Subchapter V Trustee*" means Tiffany Caron appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case, and any successor trustee.

2.1.50 "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51 "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52 "*General Unsecured Claim*" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.1.53 *"Sale Order"* means this Court's Order entered on June 4, 2024 [Dkt. #315] approving the sale of Debtor's Assets and assignment of assumed leases.

2.2    *Time*. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    *Events of Default*. The only default that can occur under this Plan is if a Holder does not receive payment pursuant to this Plan. If payment to a Holder under this Plan is not made, Holder must notify Debtor's counsel via email at bak@klosinski.com and/or mail at Bowen A. Klosinski at 1229 Augusta West Parkway, Augusta, Georgia 30909.  Debtor and Holder shall work to cure the default, which is likely due to a check being sent to a wrong address or lost in mail.

2.4 *Notices*. All notices under the Plan shall be in writing.

> *2.4.1 To the Debtor.* Unless otherwise specifically provided herein, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or facsimile and certified mail or nationally recognized overnight delivery service to Bowen A. Klosinski, Klosinski Overstreet, LLP 1229 Augusta West Parkway, Augusta, Georgia 30909, with a copy to bak@klosinski.com.  Receipt of notice by Bowen A. Klosinski shall not be deemed receipt by Debtor of the required notice.

> *2.4.2 To the Creditor.* Notice to creditors may be provided (a) at the address set forth on the poof of claim filed by such Holder, (b) at the address set forth in any written notice of address change delivered to the Debtor and the Debtor's bankruptcy counsel after the date of any related proof of claim, (c) at the address(es) reflected in the Schedules if no proof of claim has been filed and Debtor has not received written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notice shall be deemed received: (i) on the day transmitted if sent via facsimile or email, or (ii) on the day delivered if sent via nationally recognized overnight delivery or certified mail return receipt.

## Article 3

### Classifications of Claims and Interests

3.1    *Summary*. The categories of Claims and Interests set forth below classify all Claims against the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of

that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 5 shall be in full and complete satisfaction, release, and discharge of such Claims and Interests.

3.2    *Classes:*

    *3.2.1* Class 1 shall consist of the Secured Claims of Ascentium Capital, and Hamni Bank.

    *3.2.2* Class 2 shall consist of Priority Tax Claims of Debtor that are allowed under 11 U.S.C. §507. This shall include the priority portion of claims of all Taxing authorities, Internal Revenue Service, the Georgia Department of Revenue[1], and certain county tax commissioners that are owed personal property taxes for rejected stores for 2023.

    *3.2.3*  Class 3 shall consist of the Claims of any Creditor whose claim arose after January 31, 2024.  Included in this class is any Creditor's claim for Attorney's fees.

    *3.2.4*  Class 4 shall consist of all general unsecured claims.

    3.2.5   Class 5 shall consist of the Claims of Mark and Jane Rinna - $1,287,967.37.

## Article 4

### Identification of Creditors

4.1    Secured Creditors that will be paid as Class 1 Creditors, with the amounts they are owed are listed on Exhibit "B" attached hereto.

4.2    Known Class 2 creditors are set forth in Section 5.3.2 of this Plan.

4.3    Known Class 3 Creditors with Debtor's alleged amounts owed are listed on Exhibit "B" attached hereto.

4.4    Known Class 4 Creditors with Debtor's alleged amounts owed are listed on Exhibit "C" attached hereto.

Attached hereto as Exhibit "D" is the list of creditors which have filed proofs of claim in the case or have been listed in Debtor's initial Schedule E/F [Dkt.#59] (excluding those Creditors paid

---

[1] The Georgia Department of Revenue's ("GA DOR") original proof of claim (Claim No. 25-1) was filed in the total amount of $489,535.91.  Of that total claim $397,932.56 was filed as priority debt and $91,603.35 was filed as general unsecured penalties and interest.  Prior to filing, Debtor and GA DOR had entered into an offer in compromise that allowed Debtor to only pay back the priority portion of the GA DOR's Claim by making monthly installments.  Post petition, Debtor remained current for approximately two to three months on its offer in compromise plan before GA DOR stopped accepting payments.  Debtor filed an objection to GA DOR's claim [Dkt. #399 &# 405] to reduce the priority balance as well as eliminate GA DOR's unsecured claim.  That objection is still pending before the Court.  Debtor estimates GA DOR's priority portion of its claim to be approximately $380,000.00.

pursuant to Sale Order).  As part of the Sale Order, Debtor paid many of these Creditors in full at or around the time of closing.  The Claim numbers which have been paid in full and will not be taken into consideration in this plan are listed below.  A Creditor which has been paid in full and listed below may have a claim pursuant to Section 5.3.3 of this Plan, which encompasses all post-petition claims as well as claims arising under 11 U.S.C. §365 for reasonable attorney's fees.

4.5     The known Creditors of Debtor are either listed in Debtor's Schedules or have filed proof of claims.  Certain Creditors of Debtor have been paid in full pursuant to the Sale Order or as matter of going concern and in the course of business.  The Creditors set forth in Exhibits B and C are the remaining Creditors of Debtor.

4.6     Creditors' proof of claims that have been paid in full are identified as follows:

| POC 1 – City of Waynesboro | POC 2 – Charleston County | POC 5- Burke County | POC 7 – Jenkins County | POC 11 – McDuffie County |
|---|---|---|---|---|
| POC 20 – EHN Trustee No. 2, LLC | POC 28 – VanNess Holdings Grovetown, LLC | POC 27 – Julia Rodgers | POC 17 – 7351 West Central, LLC | POC 16 – William Means |
| POC 35 – JAM - SC Investments, LLC | POC 34 – N.V.A. Inc. | POC 33, 32, 31 – Augusta (Southpointe) WMA, LLC | POC 43 – Eureka Investment Properties, LLC | POC 42 – Eureka Investment Properties, LLC |
| POC 42 – Parkway Associates of Summerville, LLC | POC 49, 50 – Aiken County Tax Collector | DELETED | POC 14 – Automatic Fire Systems of Augusta | POC 15 – Carolina Air Care Heating & Air, LLC |
| POC 13 – James Testi | POC 3 – William Sewer & Drain | POC 4 – D&D Commercial Service | POC 23 - Performance Food Group | POC 26 – Steritech |
| POC 6 – Charleston Water System | POC 8 – Charleston Electric, LLC | POC 9, 10 – Berkeley Electric Cooperative | POC 24 (portion) – See Class 2 – Berkely County Tax Collector | |

These listed claims have been paid pursuant to Sale Order and in the course of the ongoing business of Debtor.  If a listed Creditor believes it is owed more than what has been paid, it shall file an

amended claim for any unpaid amount and notify Debtor's Counsel in writing pursuant to the terms of this Plan.   Failure to file an amended claim by November 19, 2024, pursuant to the terms of this Plan shall be conclusive that the creditor is paid in full.

**Treatment of claims and Interests**

5.1   *General Provisions.* The Classes, the treatment of each Class, and the voting rights of each Class are set forth below. Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

5.2   *Unclassified Claims.*

5.2.1. *Administrative Expense Claims.* Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for purposes of voting on or receiving Distributions under the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims, other than that of a Subchapter V Trustee addressed in Article 6, are instead treated separately herewith and in accordance with the requirements set forth in Sections 1129(a)(9)(A) and 1191 of the Bankruptcy Code, as applicable.

5.2.1.1.1 *Klosinski Overstreet, LLP.* With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the Klosinski Overstreet, LLP ("Firm") to serve as Debtor's bankruptcy counsel. As of the date of the filing of this Plan, Debtor's Counsel has been paid for Attorney's fees and expenses for time from January 31, 2024 through May 31, 2024 in the amount of $89,539.20 and costs in the amount of $7,971.33.  Currently pending in the Court is one application of Firm for fees and expenses for the month of June 2024 [Dkt. No. 365].  Firm shall continue to file fee applications until this matter is closed. Firm estimates $150,000.00 in fees and expenses until the final report of case is filed.

5.2.1.1.4 *Accountant Fees.* Debtor's approved accountant is Rhoden CPA Firm ("Accountant") Currently pending before the Court is Accountant's fee application for fees through June 2024.   Debtor expects one more fee application of Accountant for the following services:
   a. Bookkeeping services from April 1 to the close of sale - $3,500.00;
   b. Prepare 1099 forms in January 2025 for Vendor payments made in 2024 - $750.00;
   c. Prepare business personal property tax returns for all restaurant locations - $1,400.00;
   d.  Prepare final tax return to include the sale of business - $7,500.00;

In total, Accountant estimates $13,150.00 will be needed for Debtor's accounting needs to properly close out the business.  Debtor requests that $15,000.00 be withheld from funds of the estate and earmarked to cover the final fee application of Accountant.

*5.2.1.1.5 Post-Confirmation Professional Fees.* Debtor does not expect the need for any other professional services.

5.3     *Classified Claims.*

### *5.3.1* **CLASS 1- SECURED CLAIMS**

Ascentium Capital a Division of Regions Bank ("Ascentium Capital") asserts secured claims totaling $182,627.54 as identified in Proof of Claims Numbers: 38, 39, 40, 41, 46, 47, and 48 ("Ascentium Capital Claim").  To secure its claims, Ascentium Capital asserts a purchase money security interest upon certain equipment of Debtor which has been sold as part of the approved 363 sale.

Hamni Bank, assignee of Ascentium Capital ("Hamni Bank") asserts secured claims totaling $257,380.07 as set forth in Proof of Claims Numbers: 36 and 37 ("Hamni Claim").  To secure its claims, Hamni asserts a purchase money security interests upon certain equipment of Debtor located in various stores which has been sold as part of the Sale Order.

Upon confirmation of this Plan, Debtor will pay to Ascentium Capital and Hamni Bank the balances stated in their proof of claims without payment of any other interest or late fees.  Payment on said claims shall be made within thirty (30) days of Effective Date of Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

*Voting.* Class 1 is impaired and is entitled to vote on this Plan.

### *5.3.2* **CLASS 2 – 11 U.S.C. §507 Priority Debts**

Class 2 shall consists of all claims of Creditors with priority claims under 11 U.S.C. §507. Debtor shall pay all allowed priority claims in full upon confirmation of this Plan.  As of the date of filing of this Plan, Debtor is aware of only 3 priority claims; the Georgia Department of Revenue Berkely County, South Carolina Tax Collector, and Colleton County Treasurer.

According to Proof of claim No. 25, the Georgia Department of Revenue is owed a priority debt of $397,932.56.     Debtor estimates that the approximate balance of the priority portion of GA DOR's claim is $380,000.00.  The priority portion of GA DOR's claim will be paid in full in the amount that is either consented to be Debtor and GA DOR or ordered by this Court.

If this Court finds that GA DOR's unsecured portion of its claim is valid, the unsecured portion shall be made apart of Class 4 unsecured Creditors.

Berkeley County, South Carolina Tax Collector is owed a priority debt in the amount of $2,313.29 for 2023 personal property taxes on a rejected lease. See proof of claim 24.  A portion of proof of claim no. 24 was paid pursuant to Sale Order.  Upon confirmation of this Plan, Berkeley County Tax Collector shall be paid $2,313.29.

Colleton County Treasurer is owed a priority debt in the amount of $2,152.68 for 2023 personal property taxes on a rejected lease.  Upon confirmation of this Plan, Colleton County Treasurer shall be paid $2,152.68.

As of the date of this Plan, Debtor does not know of any remaining priority claims of Creditors.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

*Voting.* Class 2 is not Impaired and is not entitled to vote to accept or reject the Plan.

### *5.3.3.* CLASS 3 – POST PETITION CLAIMS

Class 3 shall consist of all claims of creditors that arose and became due after the Filing Date and are attributable to allowed administrative claims under 11 U.S.C. §503 or claims of Creditors for allowed and reasonable attorneys' fees under 11 U.S.C. §365.

Attached hereto as Exhibit "B" are the known Class 3 creditors with estimated amounts owed post-petition.   Any Creditor not listed on Exhibit B as a Class 3 Creditor shall have until November 19, 2024 (or by date set by Court) to file applications for administrative expenses under 11 U.S.C. §503 or applications for attorney's fees under 11 U.S.C. §365. All applications filed pursuant to this section are subject to review of the Court.  A Creditor that is listed on Exhibit B as a Class 3 Creditor will not be required to file an application for administrative expenses. Creditors who fail to file applications to receive Class 3 status by the stated deadline shall be treated as general unsecured creditors in Class 4.

Out of an abundance of caution, contemporaneously with the filing of this Plan, Debtor has filed a Motion to set an administrative claims bar date for these Class 3 Creditors ("Motion"). Motion request the bar date for such claims to be set at November 19, 2024, however, Creditors in this Class should refer to this Court's Order on Motion for the appropriate Bar Date.

A Creditor filing an application for payment as a Class 3 Creditor shall serve the following parties with a copy of said application via electronic mail:

Bowen Klosinski – bak@klosinski.com

Tiffany Caron – tiffany.caron@hotmail.com

Joel Paschke -  joel.paschke@usdoj.gov

Creditors in this Class 3 shall first attempt to reach a consent order with Debtor, Subchapter V Trustee and the United States Trustee.  If a consent order for class 3 creditor's claim is reached and an order is entered, Debtor shall make distribution on Effective Date of Plan or earlier if by Court Order.

*Voting.* Class 3 Creditors are not impaired and are not entitled to vote on this Plan.

### *5.3.4.* CLASS 4- GENERAL UNSECURED CREDITORS-

Class 4 shall consist of General Unsecured Claims as shown in Exhibit "C" ("Unsecured Exhibit") including deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f), claims arising out of the rejection of a lease or executory contract pursuant to 11 U.S.C. §§ 365 and 502(b)(6), and the allowed unsecured portion of a Claim in Classes 1 through 3 of this Plan, if any.  The unsecured claims of Popeyes Louisiana Kitchen, Inc. ("Franchisor") and the Georgia Department of Revenue have been resolved.  Consent orders on Franchisor's claim and the Georgia Department of Revenue have been presented to the Court.  The consented claim amount of Franchisor and the Georgia Department of Revenue are set forth on the Unsecured Exhibit.

The General Unsecured Creditors are made up of those creditors that have filed timely proof of claims into the case and those creditors the Debtor knows hold claims for prepetition debts.  Unsecured Creditors shall receive pro rata distribution of the remaining funds left in the Estate after payment of all higher in priority payments, including but not limited to, administrative claims, professional fees, trustee fees, claims in Classes 1, 2, and 3.

Contemporaneously with the filing of this Plan is an omnibus Objection to certain proof of claims of creditors that have been partially paid or paid in full.  Creditors whose claims were objected to need to respond by withdrawing their claim, amending their claim, or setting forth that the claim is in fact owed.

Additionally, in the event the Debtor pursues and receives any award, if any, under an Avoidance Action, the Debtor shall distribute the proceeds pro-rata, to the holder of  allowed general unsecured claims, but only after the Debtor has first made payment of cost of collection, including, but not limited, to attorneys' fees and costs, professional fees, expert fees, and fees and costs ("Collection Costs") and all claims of Class 1, 2, and 3 have been paid in full.

In the event that ERC funds[2] are received by Debtor, Debtor shall distribute the proceeds pro-rata, to the holders of allowed general unsecured claims, but only after the Debtor has first made payment to costs of receiving, accounting, and disbursing funds ("ERC Costs") and all claims of Class 1, 2, and 3 have been paid in full.  If these funds are released to Debtor, Debtor expects the need for additional professional accounting costs.  Notwithstanding the chance of receiving funds, the case shall close as set forth herein and shall be reopened if funds are received.

The Claims of the Creditors of Class 4 are Impaired by the Plan and the Holders of Allowed General Unsecured Claims are entitled to vote.

### *5.3.5* CLASS 5- SHAREHOLDER CLAIMS

Class 5 consists of the Interests Claim of Mark and Jane Rinna (collectively "Shareholders").  Shareholders claim shall be paid after all claims in Classes, 1, 2, 3, and 4 have been paid in full.

---

[2] See Liquidation Analysis Section 1.4 of this Plan for disclosure of ERC Funds.

### Article 6 Subchapter V Trustee

6.1     *Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

6.2     *Plan Payment and Termination of the Subchapter V Trustee's Services.*

*6.2.1 Case Confirmed Pursuant to 11 U.S.C. Sec 1191(a).* If the Plan is confirmed in accordance with 11 U.S.C. Sec. 1191(a) the services of the Subchapter V Trustee shall terminate upon substantial consummation.

*6.2.2 Case Confirmed Pursuant to 11 U.S.C. Sec 1191(b).* If the Plan is confirmed in accordance with 11 U.S.C. Sec. 1191(b) the services of the Subchapter V Trustee shall not be terminated upon "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code.  Since this is a plan of liquidation, the services of the Subchapter V Trustee shall terminate once all of the funds currently on hand have been disbursed pursuant to the terms of this Plan and the Subchapter V Trustee has filed the required Report of No Distribution and Request for Discharge.

6.3     *Compensation of the Subchapter V Trustee.*

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Notwithstanding any other provisions of the Plan, Debtor shall pay all compensation awarded the Subchapter V Trustee as set forth in an Order approving the Subchapter V Trustee's fees by the Court, from funds on hand in the Escrow account of Klosinski Overstreet.

Compensation under Paragraph 6.3 shall be for pre-confirmation services of the Subchapter V Trustee.  In the event the Plan is confirmed pursuant to Section 1191(b), the Subchapter V Trustee shall be entitled to additional compensation, subject to approval of the Bankruptcy Court, for post-confirmation services which shall include monitoring performance of the Debtor under the confirmed Plan.  The Subchapter V Trustee shall have until thirty (30) days after the Confirmation Order has been entered to file a final application for compensation for pre-confirmation services.

### Article 7

### Means for the Implementation of the

### Plan

7.1    *Parties Responsible for Implementation of the Plan.* Upon confirmation, Debtor will be responsible for administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and may apply for a final decree after substantial consummation and the completion of the claims analysis and objection process and at such time as Debtor deems appropriate unless otherwise required by the Bankruptcy Court. Debtor shall be authorized to reopen this case, subject to applicable court costs, after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

*Sources of Cash for Distribution.*

*7.1.1* The source of funds for the payments pursuant to the Plan is from the proceeds of the sale and the funds remaining in the DIP account(s), liquidation of the Vehicle and receipt of any ERC Funds.

7.2    *Preservation of Causes of Action.* In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date of the Plan, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically disclose any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion. Therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. **This Plan is filed with a full reservation of rights.** Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy.

7.3     *Effectuating Documents, Further Transactions*. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

7.4     *Exemption from Certain Transfer Taxes and Recording Fees*. Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.5     *Further Authorization*. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.6     *Liabilities of Debtor*. Debtor will not have any liabilities incurred prior to the Filing Date except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

7.7     *Default; Confirmation Pursuant 11 U.S.C. § 1191(b).* In the event the Plan is confirmed pursuant to 11 U.S.C. § 1191(b) and the Debtor is in default under the terms of the confirmed Plan, the Holder of an Allowed Claim, after compliance with the notice of default and right to cure as provided for in this Plan and failure of the Debtor to timely cure, shall have the right to move to dismiss the case, convert the case to Chapter 7, or request the Court, directly or through the Subchapter V Trustee, to liquidate nonexempt assets for the payment of the default amounts in full.

### Article 8 Distributions

8.1     *Disbursing Agent*. Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor's Counsel.

8.2     *Distributions of Cash*. Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

8.3    *No Interest on Claims or Interests*. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the FilingDate to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

8.4    *Delivery of Distributions*. The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor or and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the

payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

8.5     *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6     *Fractional Dollars*. *Reserved.*

*8.7*     Semi-Annual Reports.  In the event the Plan is not confirmed in accordance with 11 U.S.C. Sec. 1191(a), the Debtor shall file with the Court semi-annual reports every six (6) months, beginning on the sixth (6th) month after the Effective Date of the  Plan and continuing every six (6) months thereafter ("Reports") until all assets of the debtor have been liquidated and all funds have been disbursed pursuant to the terms of this Plan. The Reports shall provide a statement of all payments and disbursements made pursuant to the Plan. In addition to the filing of the Reports, the Debtor shall provide, at the same time of filing of the Reports, proof of payment of Plan payments contained in the Reports to the Subchapter V Trustee.

8.8     *Timing of Distributions.* Debtor shall make distributions to Creditors in Class 1, 2, and 3 within thirty (30) days of the Effective Date of the Plan.  With the remaining funds after distributions to Class 1, 2, and 3, Debtor shall disburse to the remaining general unsecured creditors within 90 days of the Effective Date of the Plan.

## Article 9

### Procedures for Treating and
### Resolving Disputed Claims

9.1     *Objections to Claims*. Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date of the Plan, or (ii) that are Allowed by the express terms of this Plan.

9.2     *No Distributions Pending Allowance*. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim (i) unless and until no objection to such Claim has been filed, or (ii) unless and until any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

9.3     *Resolution of Claims Objections*. On and after the Effective Date date of the Plan, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 10

### Provision for Assumption of Unexpired Leases and Executory Contracts

10.1    *INTENTIONALLY REMOVED*

10.2    *INTENTIONALLY REMOVED*

10.3    *Rejection of Unexpired Lease or Executory Contracts.*

   *10.3.1 Specifically Rejected.* The Debtor has specifically rejected (i) the Lease Agreement by and between Space Providers of Asheville, LLC and Debtor for Property located at 400 West Winthrop Ave, Millen, Georgia 30442; and (ii) the Lease by and between Julia Rodgers and the Debtor for real property located at 460 Highway 52, Moncks Corner, South Carolina 29461; and (iii) the Lease by between Julia Rodgers and the Debtor for real property located at 1222 Belles Highway, Walterboro, SC, 29488.

   10.3.2. *Generally Rejected.* Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date of the Plan shall be deemed **REJECTED** pursuant to Section 365 of the Bankruptcy Code on the Confirmation Date. Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after the Confirmation Date. Any claims which are not timely filed will be deemed disallowed and waived.

## Article 11

### Effect of Plan on Claims and

### Interests and Effect of Confirmation

11.2. *Discharge of Debtor.*

**11.2.1. *Discharge if Plan Confirmed Under Section 1191(a).*** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Confirmation Date regardless of whether a claimant accepted or rejected the Plan. Such discharge shall be effective upon the Confirmation Date.

**11.2.2. *Discharge if Plan Confirmed Under Section 1191(b).*** If the sale is consummated and the Plan is confirmed under section 1191(b), as soon as practicable after Debtor's completion of the payments expressly provided for under this Plan the Court shall grant Debtor a discharge of all debts.

11.3 *Discharge; Non-taxable Event.* Discharge under 10.2.1 or 10.2.2 shall constitute a substitution of Plan obligations for pre-confirmation obligations and shall not constitute a taxable event.

11.4 *Setoffs*. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

To the extent any general unsecured pre-petition creditor has been paid any amount of its unsecured claim post-petition, pre-confirmation, the amount of the creditor's pro rata distribution shall be reduced by that amount prior to any further distribution on said claim pursuant to the terms of this Plan.

11.5 *Exculpation and Limitation of Liability*. Nothing in this paragraph or in any other provisions of this Plan shall affect, alter, exculpate, limit or modify the powers of the Georgia Department of Revenue under O.C.G.A. §48-2-52; nor shall anything in this paragraph or in any other provisions of this Plan limit the liability of any person, individual or entity to the Georgia Department of Revenue under O.C.G.A. §48-2-52. Under the Plan, Debtor's current and/or post-Filing Date and pre-Effective Date of the Plan members, officers, and professionals hired by the Estate and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, and the pursuit of confirmation of the Plan, except for their willful misconduct, fraud, gross negligence, or breach of fiduciary duties and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or

Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case or the pursuit of confirmation of the Plan. **Fees and expenses which Debtor owes to its Professionals and any allowed fees and expenses of the Trustee are excluded from this Exculpation.** Any and all obligation(s) owed by any persons, individuals, or entities to the Georgia Department of Revenue pursuant to O.C.G.A. §48-2-52 are also excluded from this Exculpation.

11.6 *Injunction.* Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) any act to collect, offset, or recover any Claim against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

11.6.1 *Binding Effect.* On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

11.6.2 *Effect of Confirmation on Automatic Stay.* Except as provided otherwise in this Plan, from and after the Effective Date of the Plan, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

11.6.3 *Filing of Reports.* Debtor shall file all reports in accordance with Article 8.7 of this Plan.

11.6.4 *Post-Effective Date Retention of Professionals.* Upon the Confirmation Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtor will employ and pay professionals in their ordinary course of business.

## Article 12

### Conditions Precedent

12.1 *Conditions to the Effective Date.* The following are conditions precedent to the occurrence of the Effective Date of the Plan, each of which may be satisfied or waived in accordance with Article 12.2 of this Plan.

12.1.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date of the Plan, shall not have been stayed;

*12.1.2* All documents and agreements to be executed on the Effective Date of the Plan or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion;

*12.1.3* Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

12.2 *Waiver of Conditions to Confirmation or Consummation*. The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date of the Plan may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor). The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 13

### Retention and Scope of Jurisdiction of

### the Bankruptcy Court

13.1 *Retention of Jurisdiction*. Subsequent to the Effective Date of the Plan, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

*13.1.1* To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established by the Plan;

*13.1.2* To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

*13.1.3* To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

*13.1.4* To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

*13.1.5* To hear and rule upon all applications for Professional Compensation;

*13.1.6* To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

*13.1.7* To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

*13.1.8* To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

*13.1.9* To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

*13.1.10* To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

*13.1.11* To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

*13.1.12* To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

*13.1.13* To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

*13.1.14* To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

*13.1.15* To enter a final decree.

*13.1.16* To enter an order of discharge.

*13.1.17* To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

*13.1.18* To consider, approve, or deny modifications, amendments, or corrections to the Plan after confirmation.

13.2. *Alternative Jurisdiction*. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto. Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

13.3. *Final Decree*. The Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; and (b) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate under applicable law, including without limitation any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

## Article 14

### Miscellaneous Provisions

14.1 *Modification of the Plan*. Debtor shall be allowed to modify this Plan pursuant to section 1193 of the Bankruptcy Code to the extent applicable law permits.

14.2 *Pre-Confirmation Modifications.* Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

14.3 *Modification After Confirmation And Prior to Substantial Consummation.*

Debtor may modify the Plan prior to substantial consummation upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

14.4 *Modification After Substantial Consummation.* If the Plan has been confirmed under section 1191(b), Debtor may modify the Plan after substantial consummation upon a showing the circumstances warrant such a modification and after a notice and hearing.

14.5 *Allocation of Plan Distributions Between Principal and Interest*. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes at the discretion of the Debtor.

14.6 *Applicable Law*. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

14.7 *Preparation of Estate Returns and Resolution of Tax Claims*. Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under

section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.8   *Headings*. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

14.9   *Revocation of Plan*. Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

14.10   *No Admissions; Objection to Claims*. Nothing in this Plan shall be deemed to constitute an admission that any person, individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

14.11   *Debtor-In-Possession Bank Accounts and Operating Reports.* Debtor shall comply with all post-confirmation reporting requirements until a final decree is entered. The Debtor shall be authorized to use the Debtor-In-Possession account until the granting of a discharge, or the closing of the case, whichever occurs first.

14.12   *Exhibits/Schedules.* All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

14.13   *In the event of conversion to a case under Chapter 7.* Should this case be converted to a case under Chapter 7 of the Bankruptcy Code, all of the Debtor's legal or equitable interests, as of the date of conversion, in property that would have been property of the estate had the property of the estate not vested in the debtor by virtue of confirmation of the plan, shall be property of the estate for purposes of the Chapter 7 case, notwithstanding the vesting of the property of the estate in the debtor that otherwise arises upon confirmation of the plan; and, by way of illustration and not limitation, such property shall include all proceeds held by the debtor, on the date of conversion, of property that was property of the estate prior to confirmation of the plan.

14.14   *Windup and Dissolution*:  Upon the final distribution of all payments to be made pursuant to the terms of this Plan, the Debtor shall take all steps necessary to wind up the affairs of the company and initiate any dissolution of the LLC, if necessary or as advised by its legal and/or tax professionals.

## Article 15

## Tax Consequences

15.1 *No Tax Advice.* Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interests are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Submitted this 23rd day of October, 2024.

/s/ Bowen A. Klosinski
Bowen A. Klosinski
Attorney for Debtor
Georgia Bar No. 842225

KLOSINSKI OVERSTREET, LLP
1229 Augusta West Parkway
Augusta, Georgia 30909
706-863-2255
bak@klosinski.com

## EXHIBIT "A"

### Hypothetical Liquidation Analysis

| LIQUIDATION ANALYSIS | | | | | |
|---|---|---|---|---|---|
| RRG, INC. | | | | | |
| EXHIBIT "A" | | | | | |
| CREDITOR | | ASCENTIUM/HAMNI BANK SECURED CLAIM AMOUNT | PACIFIC PREMIER BANK SECURED CLAIM AMOUNT | NET EQUITY FOR DISTRIBUTION IN CH. 7 | |
| **ASSETS** | **VALUE** | | | | |
| BANK ACCOUNTS | $35,000.00 | | | $35,000.00 | |
| Balance of PROCEEDS FROM SALE | $2,027,446.76 | | $170,000.00 | $1,857,446.76 | |
| ERTC FUNDS (RECEIVABLE) | $1,412,335.16 | | | $1,412,335.16 | |
| VEHICLE | $10,000.00 | | | $10,000.00 | |
| | | | | | |
| Ascentium POC 38, 39, 40, 41, 46, 47 | | $182,627.54 | | | |
| Hamni Bank POC 36 and 37 | | $257,380.07 | | | |
| | | | | | |
| TOTAL | $3,484,781.92 | $440,007.61 | $170,000.00 | $2,874,774.31 | **EQUITY AVAILABLE FOR DISTRIBUTION IN CH. 7 (with ERTC Funds)** |
| | | | | $1,462,439.15 | **EQUITY AVAILABLE FOR DISTRIBUTION IN CH. 7 (without ERTC Funds)** |

Page 2 of Exhibit A.

## HYPOTHETICAL CHAPTER 7 LIQUIDATION        Two Scenarios

| | |
|---|---|
| Funds Available for Distribution | $2,874,774.31 |
| After Liquidation (with ERC Funds) | |
| | |
| Less Administrative Claims against estate | $879,000.11 |
| | |
| Less Priority Claims for Taxes, Etc. | $384,465.97 |
| | |
| **Amount available for distribution** | **$1,611,308.23** |
| **to unsecured creditors (with ERTC Funds)** | |

| | |
|---|---|
| Funds Available for Distrubution | $1,462,439.15 |
| After Liquidation (without ERC Funds) | |
| | |
| Less Administrative Claims against the Estate | $879,000.11 |
| | |
| Less Priority Claims for Taxes, Etc. | $384,465.97 |
| | |
| **Amount available for distribution** | **$198,973.07** |
| **to unsecured creditors (without ERTC Funds)** | |

## EXHIBIT "B"

Administrative Creditors, Secured Creditors, Priority Creditors

Class 1, 2, and 3

| Admin Claims | Amount Owed | Uncecured Priority Claims | Amount Owed |
|---|---|---|---|
| Georgia Department of Revenue | $71,739.72 | GA DOR | $380,000.00 |
| Dominion Energy | $25,972.49 | Berkeley County Treasurer | $2,313.29 |
| Georgia Power | $26,242.88 | Colleton County Treasurer | $2,152.68 |
| Merchants/Performance Food Group | $129,192.01 | **Total Priority** | **$384,465.97** |
| Columbia Meats | $207,837.02 | | |
| NCR Corp | $51,270.99 | | |
| 1st choice quality Heating and Air | $11,442.15 | **Professional Admins** | |
| Carolina Sound | $17,452.00 | Debtor's Counsel | $150,000.00 |
| Coastal Waste & Recycling of Georgia | $8,761.96 | Trustee | $65,000.00 |
| CSE, Inc. Halo | $7,926.32 | Accountant throuh June 25 | $18,069.00 |
| Nuco2, inc. | $3,609.02 | **Total Professional** | **$233,069.00** |
| Zenith Insurance - Workers Comp Policy Audit | $12,876.00 | | |
| WMA Southpointe | $34,380.00 | **Reserves** | |
| Wilhelmi | $17,228.55 | W-2 and 1099 services | $5,000.00 |
| | | Accountant | $15,000.00 |
| **Total Estimated Admin Claims** | **$625,931.11** | **Total Reserves** | **$20,000.00** |
| **Total with Professional Admins and Reserves** | **$879,000.11** | | |
| | | **Secured Claims** | |
| | | Pacific Premier | $170,000.00 |
| | | Ascentium | $440,007.61 |
| | | **Total Secured** | **$610,007.61** |

## EXHIBIT "C"

### General Unsecured Creditors

| General Unsecured Creditor | Amount Owed | Schedules or POC | | |
|---|---|---|---|---|
| Performance Food Group/ Merchants | $18,932.72 | Claim No. 23 | | |
| Wrightsboro Augusta Development, LLC | $99,500.00 | Claim No. 52 | | |
| Popeyes Louisiana Kitchen, Inc. | $134,443.00 | Claim No. 51 | | |
| Space Providers of Asheville, LLC | $62,363.73 | Claim 21 (see also Report of Sale for portion paid) | | |
| Julia Rodgers | $200,007.23 | Claim No. 29 | $ 105,600.00 | Lease rejection damages not filed |
| Julia Rodgers | $158,338.65 | Claim No. 30 | $ 82,500.00 | Lease rejection damages not filed |
| Georgia Power Company | $39,445.96 | Claim No. 44 | | |
| Georgia Department of Revenue | $91,603.35 | Claim No. 25 Pending Objection | | |
| American Express National Bank | $119,749.79 | Claim No. 22 | | |
| Wells Fargo Vendor Financial Services | $4,487.17 | Claim No. 19 | | |
| Dominion Energy South Carolina, Inc. | $27,677.00 | Claim No. 12 | | |
| JAC Services | $10,246.21 | | | |
| Johnson Controls Security Solutions | $8,362.88 | | | |
| GA DOR - Interest on July Sales tax | $1,377.40 | | | |

| | |
|---|---|
| **Total without Julia Rodgers Lease Rejection Damages** | **$957,602.37** |
| **Total with Julia Rodgers Lease Rejection Damages** | **$1,164,635.09** |

Estimated Dividend Provided in 4th Amended Plan     17%

## EXHIBIT "E"

### Scheduled Unsecured Creditors [Dkt#59]

| EXHIBIT "D" | | Scheduled | Filed POC am | POC # |
|---|---|---|---|---|
| 1st Choice Quality Heating and Air | 106 N Boundary St Manning SC 29102 | $6,450.60 | | |
| 511 Sponsorship Georgia, LLC | 420 S Hill St Bulford, GA 30518 | $150.00 | | |
| Airgas National Welders Inc | P.O. Box 602792 Charlotte, NC 28260-2792 | $1,774.86 | | |
| Allegra | 320A Old Trolley Rd. Summerville, SC 29485 | $74.58 | | |
| American Express | P.O. Box 60189 City of Industry, CA 91716-0189 | $120,086.21 | $119,749.79 | 22 |
| Ascentium Capital Leasing | 23970 US 59 Kingwood Area Texas 77339 | $0.00 | | |
| Atlanta Computer Sol Inc | 6735 Fox Creek Dr. Cumming, GA 30040 | $1,000.00 | | |
| Automatic Fire Systems of Augusta | 3326 Mike Padgett Hwy Augusta, GA 30906 | $2,897.38 | $3,380.73 | 14 |
| B & C of Ohio | 3062 Damascus Rd. Augusta, GA 30909 | $700.00 | | |
| Berkeley Electric Cooperative Inc | P.O. Box 340 Awendaw, SC 29429-0340 | $7,226.00 | $11,530.00 | 10, 9 |
| Berkeley Locksmith Inc | 128 Tall Pines Rd. Ladson, S.C. 29456 | $305.00 | | |
| Berlin's Restaurant Supply Inc. | 5051 Rivers Ave. North Charleston, SC 29406 | $294.57 | | |
| Burke County Health Department | P.O. Box 238 Waynesboro, GA 30830 | $150.00 | | |
| Capital Signs and Awnings | PO Box 208804 Dallas, TX 75320-8804 | $1,651.40 | | |
| Carl Townsend/ Carl's Landscaping | 300 Judy Drive Creek Goose Creek, SC 29445 | $3,000.00 | | |
| Carolina Air Care, Inc | 885 E Butternut RD Summerville, SC 29483 | $2,250.00 | $2,250.00 | 15 |
| Carolina Georgia Sound Inc | P.O. Box 14759 Augusta, GA 30909 | $19,572.68 | | |
| Carolina Hot Wash | P.O. Box  81001 Charleston, SC 29416-1001 | $1,800.00 | | |
| Carolina Sound Com Inc | P.O. Box 890711 Charlotte, NC 28289-0711 | $550.30 | | |
| Cennox Commercial Services, LLC | P.O. Box 779108 Chicago, IL 60677-9108 | $1,695.72 | | |
| Charleston Electric | 412 5th St. Summerville, SC 29483 | $912.50 | $912.50 | 8 |
| Charleston Water System | P.O. Box 568 Charleston, SC 29402-0568 | $113.56 | $1,604.00 | 6 |
| Cintas | #219 P.O. Box 630803 Cincinnati, OH 45263-0803 | $468.19 | | |
| Coastal Waste & Recycling of Georgia LLC | P.O. Box 25756 Miami, FL 33102-5756 | $3,858.54 | | |
| Coca- Cola | P.O. Box 101086 Atlanta, GA 30392 | $7,337.58 | | |
| Comcast | P.O. Box 105184 Atlanta, GA 30348-5148 | $1,998.72 | | |
| CSE, Inc. | 3182 Momentum Place Chicago, IL 60689-5331 | $12,680.64 | | |
| Csra Hood Exhaust LLC | 1861 Lodgepole Ave. North Augusta, SC 29841 P.O. Box 498 | $1,200.00 | | |
| Dominion Energy | P.O. Box 100255 Columbia, SC 29202-3255 | $11,340.84 | $27,677.00 | |
| Ecolab Inc. | 6252 Network Place Chicago, IL 60673-1262 | $5,744.24 | | |
| Equifax Workforce Solutions LLC | 4076 Paysphere Circle Chicago, IL 60674-4076 | $59.86 | | |
| Evening Post Publishing Newspaper Group | P.O. Box 604134 Charlote, NC 28260-4134 | $375.00 | | |
| Fain Septic Tank Inc | P.O. Box 3437 Summerville, SC 29484-3437 | $5,300.00 | | |
| FedEx | P.O. Box 660481 Dallas, TX 75266-0481 | $138.73 | | |
| Gas South | P.O. Box 530552 Atlanta, GA 30353-0552 | $280.38 | | |
| Georgia Power | 96 Annex Atlanta, GA 30396-0001 | $6,515.61 | $39,445.96 | 44 |
| Georgia Sound Communications | P.O. Box 890333 Charlotte, NC 28289-0333 | $58.85 | | |
| Hansen's Wildlife Removal | 1132 Shoreham Rd. Charleston, SC 29412 | $2,045.00 | | |
| Huggins Waste Services | 71 Horsetrail Rd. Pembroke, GA 31321 | $5,235.00 | | |
| J.A.C. Services Inc. | 107 Elk's Lodge Lane Summerville, SC 29483 | $22,414.82 | | |
| Johnson Controls Security Solutions | P.O. Box 371967 Pittsburgh, PA 15250-7967 | $2,225.22 | | |
| Kay Chemicals | PO Box 32027 New York, NY 10087 | $7,884.89 | | |
| Loomis | P.O. Box 120757 Dallas, TX 75312-0757 | $15,723.51 | | |
| M.K. Daniels Electric | 3320 Westcliffe Ct. Augusta, GA 30907 | $1,062.56 | | |
| Master Lawn | 4873 Old Belair Ln. Grovetown, GA 30813 | $12,000.00 | | |
| Miller Signs Inc | 2302 Air Park Rd. N. Charleston, SC 29406 | $1,301.98 | | |
| NCR Corp | 14181 Collections Centere Drive Chicago, IL 60693 | $29,271.63 | | |
| North to South Plumbing Services | 1562 Sweet Myrtle Circle Mt Pleasant, SC 29466 | $1,608.84 | | |
| Nuco2 Inc | P.O. Box 417902 Boston, MA 02241-7902 | $6,123.31 | | |
| PLIC- SBD GRAND ISLAND | P.O. Box 77202 Minneapolis, MN 55480-7200 | $2,437.89 | | |
| Polar Refrig | 1733 Harrogate Dr. Augusta, GA 30906 | $6,285.32 | | |
| Pye-Barker | P.O. Box 735358 Dallas, TX 75373-5358 | $6,821.90 | | |
| Refrigeration Gaskets | 121 Cuthbert Dr. Goose Creek, SC 29445 | $3,120.00 | | |
| RepublicServices | P.O. Box 9001099 Louisville, KY 40290-1099 | $4,189.73 | | |
| RotoRooter | 136 Tanner Road Greenville, SC 29607 | $1,170.71 | | |
| SCPW | P.O. Box 63070 Charlotte, NC 28263-3070 | $527.96 | | |
| See-Thru | 721 Jackie Hart Rd. Statesboro, GA 30461 | $150.00 | | |

## Exhibit D page 2

| | | | | |
|---|---|---|---|---|
| Shoes For Crews, Inc. | P.O. Box 734176 Chicago, IL 60673-4176 | $219.57 | | |
| Sparrow Enterprises | 306 Legendres Dr. Goose Creek, SC 29445 | $1,944.95 | | |
| Steritech | PO Box 14095 Reading, PA 19612 | $1,450.00 | $2,030.00 | 26 |
| Stratacache | 40 N. Main Suite 2600 Dayton, Ohio 45423 | $1,990.00 | | |
| Teresa Zielaznicki | P.O. Box 50312 Summerville, SC 29485 | $272.70 | | |
| The Drain Surgeon | 664 South Old Belair Rd Suite B Grovetown, GA 30813 | $625.00 | | |
| The McDuffie Progress | P.O. Box 1090 Thomson, GA 30824 | $300.00 | | |
| UHS Premium Billing | P.O. Box 94017 Palatine, IL 60094-4017 | $14,034.52 | | |
| United States Liability Insurance Co. | PO Box 62778 Baltimore, MD 21264-2778 | $63.00 | | |
| Viking Cloud Inc. | Dept CH1701 Palantine, IL 60055-7101 | $2,656.02 | | |
| Wasserstrom Inc | P.O. Box 933469 Cleveland, OH 44193 | $10,327.40 | | |
| Waste Management | P.O. Box 4648 Carol Stream, IL 60197-4648 | $1,234.02 | | |
| Whaley Food Service | P.O. Box 615 Lexington, SC 29071 | $3,454.52 | | |
| Williams Sewer & Drain | 887 Stagecoach Rd NE Thomson, GA 30824 | $351.43 | $351.43 | 3 |
| WTHO-FM, WTWA | 788 Cedar Rock Rd NW Thomson, GA 30824 | $724.00 | | |
| WYBO 929 FM | 2 Milledge Rd Augusta, GA 30904 | $140.00 | | |

| UNSECUREDS NOT SCHEDULED/ POCS FILED | | | |
|---|---|---|---|
| D&D COMMERCIAL SERVICES | 777 Fourpoints Road West Keysville, GA 30816 | $3,054.00 | 4 |
| Wrightsboro Augusta Development, LLC | 1030 Philip Street, New Orleans 70130 | $99,500.00 | 52 |
| Wells Fargo Vendor Financial Services | 800 Walnut Street MAC F0005-055, Demoines, IA 50309 | $4,487.17 | 19 |
| James Testi | 4441 Shadowmoor Drive, Martinez, GA 30907 | $3,400.00 | 13 |
| Performance Food Group | | $348,116.03 | |